IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

G & T CONVEYOR COMPANY, INC.,

          Plaintiff,                                           11cv0562
                                                                    **ELECTRONICALLY**
          v.                                                                   **FILED**

ALLEGHENY COUNTY AIRPORT
AUTHORITY,

          Defendant.

## Memorandum Opinion on Motion to Dismiss Amended Complaint
## (doc. no. 21)

**I. Introduction**

This is an action for breach of contract. On April 29, 2011, Plaintiff, G & T Conveyor Company, Inc., filed a one count complaint in this Court, pursuant to 28 U.S.C. § 1332, alleging breach of contract for work it performed at the Allegheny County Airport Authority (ACCA) on baggage handling conveyors for a contract amount of $9,008,600.00. On May 26, 2011, Defendant filed a Motion to Dismiss the Original Complaint (doc. no. 10), and on June 8, 2010, Plaintiff filed an Amended Complaint alleging Breach of Contract, and adding claims for Promissory Estoppel, Unjust Enrichment, and violation of the Pennsylvania Contractor and Subcontractors Payment Act (doc. no. 15). On June 21, 2011, Defendant filed a Motion to Dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. no. 21), and on June 29, 2011, plaintiff filed its Response in Opposition thereto (doc. no. 23).

For the reasons discussed below, defendant's Motion to Dismiss will be GRANTED in part and DENIED in part.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), civil complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] To survive a motion to dismiss under Rule 12(b)(6), a claim for relief now "'requires more than labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (quoting *Twombly*, 550 U.S. at 555). While Rule 8 was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

In light of the Supreme Court's decision in *Iqbal*, the United States Court of Appeals for the Third Circuit has advised district courts to review Rule 12(b)(6) motions to dismiss for failure to state a claim as follows:

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-

---

[1] In *Twombly*, the United States Supreme Court abrogated its decision in *Conley v. Gibson*, 355 U.S. 41 (1957), which allowed dismissal of a claim only if "no set of facts" could be conceived to support it. *Conley*, 355 U.S. at 45.

2

specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

In conducting this analysis, the Court will accept all of the plaintiff's factual allegations as true and construe all inferences in the light most favorable to the non-moving party. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *See Maio v. Aetna*, *Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). To satisfy the requirement of Federal Rule 8(a)(2) for a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951.

This standard does not impose a heightened burden on the claimant above that already required by Rule 8, however, but instead calls for fair notice of the factual basis of a claim and enough specificity to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *See Twombly*, 550 U.S. at 555; *Phillips*, 515 F.3d at 234.

### III. Factual Background

Plaintiff, G&T Conveyor Company, Inc., is a Florida corporation that is in the business of designing, manufacturing, and installing high-quality baggage handling systems in airports throughout the United States. Doc. No. 15 ¶ 1, 6. Defendant, ACAA , operates the Pittsburgh International Airport in Allegheny County, Pennsylvania. *Id.* at ¶ 2, 7.

On August 2, 2007, the parties entered into a contract for specific work on the North Baggage In-Line EDS Project at the Pittsburgh International Airport at an agreed price of $9,008,600. *Id.* at ¶ 8. In 2009, Plaintiff conducted pre-Integrated Site Acceptance Test ("ISAT") activities to the satisfaction of the Defendant, the Airport Project Manager, the Baggage Handling System Designer and Consultant, and the Transportation Security Administration ("TSA") Technical Representative for the project. *Id.* at ¶ 9. After completion of these tests, Plaintiff received approval to proceed with the formal ISAT test, and pursuant to FAR 52.245-1(d), Plaintiff relied on the CTX machines allegedly supplied by Defendant (through the TSA) being fully functioning and operational when testing began. *Id.* at ¶ 10, 11. When the certification agency, Battelle, came on site and testing commenced, it was determined that reports by a third party hired by Defendant could not be provided because certain work was not completed, the CTX machines were not functioning properly, and the ISAT tests would have to stop. *Id.* at ¶ 12.

In order to continue the project, Defendant was required to modify the site-acceptance criteria from what had been set out in the original contract to adjust to the deficient performance of the CTX machines. *Id.* at ¶ 13. Although the scope of Plaintiff's work under its contract with Defendant did not change, Plaintiff was delayed for twenty-eight days while the site-specific material was being modified. *Id.* at ¶ 14. Only after the criteria had been modified was Plaintiff

directed to continue work, and the CTX machines provided by Defendant (allegedly through TSA) were able to pass the test. *Id.* at ¶ 15. The delay, however, allegedly caused damage to Plaintiff in an amount alleged to be in excess of $173,000. *Id.* at ¶ 16. Despite Plaintiff's alleged claim and repeated requests for an equitable adjustment, no such adjustment was granted nor was any change order issued by Defendant, and Plaintiff was never compensated for the delay. *Id.* at ¶ 17.

### IV. Discussion

In support of its Motion to Dismiss, Defendant alleges that Plaintiff's Amended Complaint should be dismissed in its entirety. Specifically, as to Count One (Breach of Contract), Defendant argues that the claim is barred by the limitation of liability provisions in the contract, and Plaintiff's alleged costs are its own contractual responsibility. As to Count Two (Promissory Estoppel), Defendant contends that this claim is unwarranted because the parties already entered into an enforceable contract, and alternatively, Plaintiff fails to establish the requisite elements for a Promissory Estoppel claim. As to Count Three (Unjust Enrichment), Defendant argues that the claim is also inapplicable because the parties' relationship is founded on an expressed contract and parties in contractual privity are not entitled to restitution based on the doctrine of unjust enrichment. Finally, as to Count Four (Statutory Damages under the Pennsylvania Contractor and Subcontractor Payment Act ("PCSPA")), Defendant posits that the terms of the contract do not require Defendant to pay for the increased costs requested by Plaintiff.

While Plaintiff alleges that Defendant violated or breached their contract by failing to compensate it for the time it lost in completing its contract based upon the delays based upon the

conduct of the TSA, Defendant argues that the terms of the contract (the Project Manual), and specifically the Limitation of Liability provisions contained therein, preclude recovery by Plaintiff. In support thereof, Defendant contends that because the TSA caused the alleged delay, and because the TSA is considered to be a "contractor" under the terms of the contract at issue, that any liability against the ACAA is eliminated, by the Limitation of Liability clause in the contract (the Project Manual) (see doc. no. 22-1 at 6).

The Limitation of liability clause (as contained at Section 50-05 of the Project Manual) requires a Contractor, such as G & T, to assume "all liability . . . because of inconvenience, delays, or loss experienced by him because of . . . other Contractors working within the limits of the same project." Doc. No. 22 at 5.[2]

The crux of the issue is whether the TSA, who was the party allegedly responsible for causing the delay, is a "contractor" as that term is defined under the operative language of the Contract between the parties. The language of the Project Manual, which neither party disputes is part of the Contract between the parties, defines a Contractor (under Section 10-30) as, "The individual, partnership, firm, or corporation primarily liable for the acceptable performance of the work contracted and for the payment of all legal debts pertaining to the work who acts directly or through lawful agents or employees to complete the contract work."

While Defendant argues, in a footnote of its Brief in Support of its Motion to Dismiss, that the TSA operates under a "Grant" with the ACCA and is therefore a "Contractor" under the case law, citing *Bowen v. Massachusetts*, 487 U.S. 879, 923 (1988), Plaintiff opposes this

---

[2] This Court may consider the contractual documents, upon which the Amended Complaint is based, without converting the Motion to Dismiss into a Motion for Summary Judgment. *Pension Benefit Guar. Corp. v. White Consol Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

argument, and contends that unsworn representations of counsel as to the existence and content of an undisclosed TSA "grant" are not proper for consideration by this Court at this time. This Court agrees with Plaintiff.

Therefore, at this stage of the proceedings, the Court will deny the Motion to Dismiss as to Count One (Breach of Contract) of the Amended Complaint, as premature. The parties shall proceed to discovery on this issue, and may file a Motion for Summary Judgment, if appropriate, after fully developing the record on the alleged status of the TSA as a "Contractor."

In its Amended Complaint, Plaintiff advances three additional theories of liability. Plaintiff sets forth a Promissory Estoppel claim and an Unjust Enrichment claim as "alternative" basis' of liability.[3] The Court recognizes the proposition that Pennsylvania courts, and the federal courts, allow "alternative" and seemingly inconsistent theories, *Altantic Paper Box Co. v. Whitman's Chocolates*, 844 F.Supp. 1038, 1043 (E.D. Pa. 1994), at the pleadings stage.

At first blush, it would appear that Plaintiff's claims for Promissory Estoppel and Unjust Enrichment should be dismissed based upon the parties seeming agreement that a valid and enforceable Contract exists between the parties.

Out of an abundance of caution, however, the Court will deny the Motion to Dismiss Counts II and III, at this juncture, and allow the parties to develop the record on the existence of a valid contract. If, as the Court suspects, the parties agree that a valid and enforceable contract (with required consideration) exists, then it would necessarily follow that Plaintiff's claims for Promissory Estoppel and Unjust Enrichment would be dismissed, because both theories only

---

[3] Defendant argues, and this Court agrees, that Promissory Estoppel and Unjust Enrichment claims are precluded when a valid contract exists. *MD Net., v. Pharmacia Corp.* 147 Fed. Appx. 239 (3d Cir. 2005). *U.S. v. Kensington Hosp.*, 760 F.Supp. 1120 (E.D. Pa. 1991).

apply to enforce a promise not supported by consideration. *MD Net., v. Pharmacia Corp*. 147 Fed. Appx. 239 (3d Cir. 2005). *U.S. v. Kensington Hosp.,* 760 F.Supp. 1120 (E.D. Pa. 1991).

Finally, as for Plaintiff's claim (at Count Four) for alleged violation of the PCSPA, the Court will GRANT the motion to dismiss on this claim because the terms of the contract, and the lack of a written change order, compel this result. The PCSPA, 73 P.S. § 501 et seq., which is a statute that is intended to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract, requires the owner to pay "the contractor strictly in accordance with the terms of the construction contract." § 505(a). It allows a contractor to collect interest, penalties, attorneys' fee and expenses when an owner failed to make payments required by the contract. *Betco, Inc. v. Gatesman*, 2009 Pa. & C LEXIS 114-5-6 (Allegheny Co. 2009). On the face of the contract, and the factual allegations in the Amended Complaint, however, no change order was issued by the ACAA, and the provisions of the contract specifically state that the terms of a written change order must be signed by the required parties, and will be included within the scope of the contract. Doc. No. 22-2; Doc. No. 15 at 17. The absence of a change order necessitates a finding then that this request for additional compensation is outside the scope of the contract. Therefore, Plaintiff's claim for violation of the PCSPA is without merit, and Defendant's Motion to Dismiss as to Count Four will be GRANTED.

## V. Conclusion

For the reasons discussed hereinabove, Defendant's Motion to Dismiss will be DENIED as to Counts One, Two and Three, and GRANTED as to Count Four of the Amended Complaint. An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties